IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

---

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

**v.**                       **CR. No. 98-427 JP**

**DANIEL SHAULIS, TAMMY POWELL SHAULIS, and SHARON EILEEN FELLER,**

    **Defendants.**


## MEMORANDUM OPINION AND ORDER

  Defendants Daniel Shaulis and Tammy Shaulis separately filed motions to suppress evidence (Doc. Nos. 33 and 39, respectively).  Each Defendant has adopted every pretrial motion of every other Defendant as his or her own.  At a hearing held August 14, 1998 Miles Hanisee represented the United States; Roger Finzel represented Daniel Shaulis; Angela Arellanes represented Tammy Shaulis; and Robert Cooper represented Sharon Feller.   After a careful review of the law, the briefs, the exhibits, the testimony proffered at the hearing, and a post-hearing letter clarifying the Government's position regarding redaction of the Affidavit for search warrant, I conclude that the Defendants' motions to suppress evidence should be granted.

  As a preliminary matter, I note that at the August 14, 1998 hearing Defendant Sharon Fellers withdrew both her "Motion for Cooperating Individual Discovery" (Doc. No. 34) and her "Motion for Disclosure of Impeaching Information" (Doc. No. 35).  In addition, Defendant Daniel Shaulis withdrew his "Motion to Reveal Identity of Confidential Informant" (Doc. No. 32).  Thus,

these three motions are moot and should be denied.

## Factual Background

The facts in this case are essentially undisputed. Sometime during the month of May, 1998, Mark Swanson and Artemio Cantu, agents with the Drug Enforcement Administration, received information that a white female driving a white extended cab Ford pickup truck bearing New Mexico license plate 633HJA had purchased items used in the manufacture of methamphetamine. On May 29, 1998 Agents Swanson and Cantu conducted surveillance of that white Ford pickup truck and observed it being driven by a woman, later identified as Defendant Tammy Shaulis, who traveled to Costco Wholesale and purchased cold tablets containing pseudoephedrine, a known ingredient in the manufacture of methamphetamine. According to the evidence presented at the hearing, Defendant Tammy Shaulis bought a total of 288 tablets for the treatment of colds and allergies.

Agents Swanson and Cantu then followed Tammy Shaulis to Home Depot, where they saw her purchase plastic tubing and two one-gallon cans of acetone, items used in the process of manufacturing methamphetamine. At approximately 7:15 p.m. on May 29, 1998 Agents Swanson and Cantu asked the Albuquerque Police Department ("APD") to stop Defendant Tammy Shaulis' truck for the purpose of identifying the driver. APD Officer Doug Walton pulled the white pickup truck over for the sole purpose of obtaining the driver's name. The driver provided information that identified her as Tammy Shaulis. After the stop by Officer Walton, Agents Swanson and Cantu followed Tammy Shaulis to the "area" of 4711 Sundance Trail NW and then terminated their surveillance.

**Analysis**

**1.      The investigatory stop**

First, Defendants assert that APD Officer Walton did not have reasonable suspicion to make the investigatory stop of Tammy Shaulis' vehicle.  I find this argument to be without merit.

A detention is justified at its inception only if law enforcement officials are aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that the detained individual may be engaged in criminal activity.  See United States v. Cantu, 87 F.3d 1118, 1121 (10th Cir.), cert. denied, 117 S.Ct. 265 (1996).  To determine what constitutes a reasonable suspicion, an officer must look at the totality of the circumstances taken in consideration with the officers own personal experiences in detecting illegal activity.   United States v. Brignoni-Ponce, 422 U.S. 873, 885 (1975); United States v. Cortez, 449 U.S. 411, 417-18 (1981). "Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." Cortez, 449 U.S. at 417-18.  Reasonable suspicion is a less demanding standard than probable cause and can arise from information that is less reliable than that required to show probable cause. Alabama v. White, 496 U.S. 325, 330 (1990).

In this case, Agents Swanson and Cantu had information from a confidential informant that a white female driving a specific truck had purchased items used in the process of manufacturing methamphetamine.  That information was later corroborated on May 29, 1998, when the Agents observed the driver of that truck, Tammy Shaulis, purchase a large quantity of cold and allergy pills containing a precursor chemical for the manufacture of methamphetamine. The tip was affirmed again when the Agents saw Tammy Shaulis buy acetone, an additional

necessary ingredient for "cooking" methamphetamine, and plastic tubing, which is part of the manufacturing apparatus.

Defendants argue that Tammy Shaulis legally purchased allergy pills, acetone, and plastic tubing over the counter and that each item has a legitimate purpose or use unrelated to the manufacture of methamphetamine. That much is certainly true; no single item purchased by Tammy Shaulis on May 29, 1998 was sold to her illegally and each item could have a lawful use. However, the unusual combination of purchases of components of the methamphetamine manufacturing process made by Defendant Tammy Shaulis during a short period in a single day, along with the relatively large quantities purchased, would legitimately raise reasonable suspicions in an experienced agent or police officer that Ms. Shaulis was involved in criminal activity. The fact that the agents' own observations corroborated the information that had been provided earlier by an informant further supported the agents' reasonable suspicion. Thus, Officer Walton legally stopped Defendant Tammy Shaulis because law enforcement had reasonable suspicion to believe that Shaulis was engaged in criminal activity.

**2.      The search of the residence**

Defendants also contend that the information in Agent Swanson's affidavit[1] is insufficient to establish probable cause to search 4711 Sundance Trail NW. The United States concurs with the Defendants that, for the purpose of determining whether the affidavit sets forth facts establishing probable cause to search the residence, paragraph 5 of Agent Swanson's affidavit

---

[1] Although none of the Defendants raised the issue at the hearing, I note that page seven of Agent Swanson's Affidavit states that it was sworn and subscribed to by him on May 11, 1998. I find this odd, given the fact that the Affidavit describes events that took place on May 29, 1998.

should be stricken under Franks v. Delaware, 438 U.S. 154 (1978).  Thus, my evaluation of the affidavit will exclude all information contained in paragraph 5.[2]

An affidavit in support of a search warrant must demonstrate that there is a "fair probability that evidence of a crime will be found in the place to be searched."  United States v. Richardson, 86 F.3d 1537, 1545 (10th Cir.) (quoting United States v. Reyes, 798 F.2d 380, 382 (10th Cir. 1986)), cert. denied, Richardson v. United States, 117 S.Ct. 588 (1996).  In reviewing a Magistrate Judge's conclusion that probable cause exists, a district judge must focus on the "four corners" of the affidavit.  United States v. Gladney, 48 F.3d 309, 312 (8th Cir. 1995); see also Kaiser v. Lief, 874 F.2d 732, 734 (10th Cir. 1989).

Agent Swanson's affidavit sets forth, in relevant part, the following information:

> 3.  During the month of May, 1998, Special Agents Mark Swanson and Artemio Cantu received information that an unidentified white female, driving a white extended cab Ford pick-up, bearing New Mexico license plate 633HJA had purchased items that are known to the Agents to be used in the manufacture of

---

[2]Paragraph 5 of Agent Swanson's Affidavit reads:

Also, on 10/28/97, Agent Richard Rottinger observed a male subject, later identified as Daniel B. SHAULIS, purchase laboratory glassware and apparatus. The glassware purchased included a 12 liter, single neck round bottom flask, a 45/50 glass adapter, a 1200 mm ahlin condenser, four lengths of glass tubing and two large laboratory suction bulbs.  Agent Rottinger observed Daniel SHAULIS enter a 1994 white Ford Ranger pickup truck bearing New Mexico license tag 792FJB.  It should be noted that this vehicle was seen by Agents Swanson and Cantu parked in the driveway of 4711 Sundance Tr. NW., Albuquerque, NM on 5/29/98.

This paragraph ties criminal activity directly to 4711 Sundance Trail NW.  With its omission, the glue that binds criminal activity to the residence to be searched evaporates.  It is not clear why the Government agreed that the entirety of paragraph 5–rather than merely the name Daniel Shaulis–should be stricken from Agent Swanson's affidavit.  The erroneous statement in Paragraph 5 was simply the misidentification of the "male subject" as Daniel B. Shaulis.

  methamphetamine.  On May 29, 1998 Agents Swanson and Cantu established surveillance on the aforementioned vehicle and observed the aforementioned vehicle driven by a white female, later identified as Tammy SHAULIS.  On 5/29/98, Agents Swanson and Cantu observed the aforementioned vehicle stop at Costco Wholesale, located at 1420 Renaissance, Albuquerque, NM.  Agent Cantu observed SHAULIS purchase a quantity of cold tablets, which contain pseudoephedrine, a known ingredient in the manufacture of methamphetamine.  Also on 5/29/98, Agent Swanson observed SHAULIS purchase two, one gallon cans of Acetone and plastic tubing at the Home Depot, located at 1220 Renaissance NE, Albuquerque, NM.  These items are known to affiant to be items used in the manufacture of methamphetamine.

    4.  At approximately 7:15 PM on 5/29/98, Agents Swanson and Cantu contacted the Albuquerque Police Department (APD) in regards to having the vehicle noted in paragraph #3 stopped and the driver identified.  APD Officer Doug Walton responded and subsequently identified the driver as Tammy SHAULIS.  After the noted traffic stop, Agents Swanson and Cantu followed SHAULIS to the area of 4711 Sundance TR. NW.  At this point surveillance was terminated.

Affidavit at 1-2.

  Without paragraph 5, Agent Swanson's Affidavit is lacking in one critical respect: it does not set forth sufficient facts demonstrating a fair probability that contraband, illegal activity, or any other evidence of a crime would be found at 4711 Sundance Trail NW, the residence to be searched.  According to the Affidavit, after Officer Walton obtained Defendant Tammy Shaulis' name, Agents Swanson and Cantu followed her to the "area" of 4711 Sundance Trail NW.  Nothing in the Affidavit indicates that the Agents actually observed Defendant Shaulis drive to that address, stop there, or enter the residence at 4711 Sundance Trail NW.  The Affidavit does not state that Defendant Shaulis lived at 4711 Sundance Trail NW or even that Tammy Shaulis was acquainted with anyone who resided there.  Nor does the Affidavit state that the Agents observed any other suspicious person enter the home at 4711 Sundance Trail NW.  Furthermore, the Affidavit contains no information regarding suspicious activity at 4711 Sundance Trail NW.

In short, there is nothing in the Affidavit that adequately explains why 4711 Sundance Trail NW should be the target of a search by law enforcement.  The mere fact that agents observed Defendant Shaulis driving in the general area of 4711 Sundance Trail NW is insufficient to support probable cause to search the home at that address or any other nearby residence in "the area of 4711 Sundance TR. NW."  Consequently, the Defendants' Motions to Suppress should be granted.

    IT IS THEREFORE ORDERED that:

(1)    Defendant Sharon Fellers' "Motion for Cooperating Individual Discovery" (Doc. No. 34) and her "Motion for Disclosure of Impeaching Information" (Doc. No. 35) are DENIED;

(2)     Defendant Daniel Shaulis' "Motion to Reveal Identity of Confidential Informant" (Doc. No. 32) is DENIED;

(3)    Defendants Daniel Shaulis and Tammy Shaulis' motions to suppress evidence (Doc. Nos. 33 and 39, respectively) are GRANTED and the evidence found during the search of 4711 Sundance Trail NW is suppressed.

    _____
    UNITED STATES DISTRICT JUDGE